[No. 779-2.    Division Two.    June 22, 1973.]

JACKIE L. WASHBURN *et al., Appellants,* v. GORDON ESSER *et al., Respondents.*

*Don W. Taylor* (of *Fristoe, Taylor & Schultz*), for appellants.

*Leonard W. Kruse* (of *Shiers, Kruse & Roper*) and *James B. Sanchez* (of *Sanchez, Martin & Armstrong*), for respondents.

ARMSTRONG, J.—The plaintiffs have appealed from a judgment in a quiet title action establishing an easement by prescription in favor of the defendants. The sole issue

raised by the appeal is: Does the use of a roadway for 10 years pursuant to an oral grant establish a prescriptive easement? We hold that it does.

In May, 1946, the owners of four adjacent, undeveloped lots on Tiger Lake, in Mason County, constructed a private road to provide automobile access to the lake. Because of the steep grade from the beach to the upper portions of the lots the road was constructed to cross all four lots. A few years later a curve in the road was widened to provide better automobile access to the beach.

All four original owners agreed to and did share in the cost of construction, repair and use of the road. Their agreement was never reduced to writing. Following construction of the road the lot owners considered that they had a right to use it.

In 1959 one of the original owners sold a portion of his lot to plaintiffs. In 1968 defendant Herrick, an original owner, sold portions of his property to defendants Esser and Bond. Other property changed hands but the present owners are not parties to this action.

The road was used by the original four lot owners, and their successors in interest, until May, 1971. At that time the plaintiffs posted "road closed" signs and blockaded the road where it crossed their property. This quiet title action followed the dispute over the road closure.

The suit was tried to the court. The trial court specifically found that "following construction of the road, the original lot owners considered they had a *right* to use the road. That none of the four or their successors in interest ever asked permission of anyone to use the road." (Italics ours.) Accordingly, the court held that the defendants or their predecessors had acquired an easement by prescription for ingress and egress after 10 years from the date the original four lot owners began using the road.

The plaintiffs contend that the evidence established mere permission to use the road and that a permissive use cannot ripen into a prescriptive easement.

■ ■ The plaintiffs are correct in their assertion that a

mere permissive use does not commence the running of the period of prescription. A use which is permissive in its inception cannot ripen into a prescriptive easement unless the user makes a distinct and positive assertion of a right adverse to the owner of the property. *State ex rel. Shorett v. Blue Ridge Club, Inc.,* 22 Wn.2d 487, 156 P.2d 667 (1945); *Northwest Cities Gas Co. v. Western Fuel Co.,* 13 Wn.2d 75, 123 P.2d 771 (1942) (modified on other grounds by *Cuillier v. Coffin,* 57 Wn.2d 624, 358 P.2d 958 (1961)).[1]

Plaintiffs contend that no prescriptive right can come into existence if there is any communication of assent between adjoining landowners prior to use of the road in question. Defendants correctly point out that plaintiffs fail to make a distinction between a license of use, which is revocable by the landowner, and a grant of use as a matter of right.

In its carefully prepared memorandum opinion, the trial court addressed itself to this issue:

> In the instant case the court finds the use of the road was not *permitted* as neighborly courtesy. The four original lot owners made an *oral* agreement to put in the

---

[1] *Northwest Cities Gas Co. v. Western Fuel Co.,* 13 Wn.2d 75, 123 P.2d 771 (1942), written by Justice Steinert, contains a comprehensive discussion of the law relating to acquisition of easements by prescription. While it does not dispose of the issue presented in this case, it does present a helpful analysis of related law. It must be remembered, however, that *Northwest Cities* was modified by *Cuillier v. Coffin,* 57 Wn.2d 624, 358 P.2d 958 (1961). *Cuillier* modified the cases which held that use of another's land for the prescriptive period creates a *presumption* that the use was adverse and that the burden was then upon the owner to show that the use was permissive. The *Cuillier* court then stated the Washington rule at page 627:

We think, however, a more accurate statement, based on the results and holdings in all of our cases, would be that such unchallenged use for the prescriptive period is a circumstance from which an inference may be drawn that the use was adverse. Such unchallenged use is but one circumstance, and there may well be a combination of circumstances from which the trier of the facts could determine that such use was permitted as neighborly courtesy and was not adverse. *Roediger v. Cullen* (1946), 26 Wn. (2d) 690, 175 P. (2d) 669, *State ex rel. Shorett v. Blue Ridge Club* (1945), 22 Wn. (2d) 487, 156 P. (2d) 667.

road crossing the four lots so as to provide access to the beach portion of the four lots. They agreed to and did in fact share the cost. After the road was put in it was used by each considering such use to be a *matter of right*. No permission was asked and none was granted. The road was used for over twenty years by the lot owners and their successors in interest as the means of reaching the beach. No attempt was made by any owner to challenge the use until the plaintiffs sought to block the access in May, 1971.

Since the four lot owners agreed to the construction of the road across their respective lots, shared in the cost, and thereafter used it to reach the beach portion of their lots for a length of time beyond the period of prescription, this court finds the mutual use of the entire road by each under a claim of right was essentially adverse to the separate and exclusive right of each other lot owner.

We believe the circumstances in the instant case establish the exceptional situation in which a use of another's land is adverse even though the landowner agreed to the use of his property. The important question is whether the landowner permitted the use as a mere revocable license or whether an oral grant of a permanent right to use the property was intended. It is generally agreed that use of an easement under claim of right by virtue of an oral grant may be adverse so as to give a title by prescription, although the parol grant itself is void under the statute of frauds. If the use of the easement acquired by the oral grant continues for the prescriptive period of 10 years in a manner that is open, notorious, continuous and adverse to the owner of the land, the oral grant then ripens into a prescriptive easement to permanently use the road. *Lechman v. Mills*, 46 Wash. 624, 91 P. 11 (1907); *see Miller v. Jarman*, 2 Wn. App. 994, 471 P.2d 704 (1970); *and see Cuillier v. Coffin, supra*; 2 G. Thompson, *Real Property* § 345, at 257 (repl. 1961); 5 Restatement of Property § 458(f) (1944); 28 C.J.S. *Easements* § 18(j) (1941); Annot., 27 A.L.R.2d 332, 339 (1953).

Where there has been an oral permission of use, the presence of consideration is helpful in determining whether

the parties intended to grant a permanent right or merely a revocable license to use the land. The presence of consideration indicates the creation of an easement but the lack of it does not necessarily create merely a license. 2 G. Thompson, *Real Property, supra* § 341, at 222. We will, therefore, review the evidence to ascertain whether there was consideration to support a grant of a permanent right to use the road.

All four owners agreed to the construction of the road which crossed each of the properties. It is interesting to note that the crossing of the properties to obtain a more feasible access to the beach, the widening of a curve to improve the road and the initial planning were suggested by the original owner who conveyed property to the plaintiff. The evidence would also indicate that defendant Herrick, an original owner, performed most of the work in road maintenance, built a house at the highest location on his property and substantially improved his beach property.

An analysis of all of the testimony establishes that the original owners agreed upon and jointly constructed a roadway that was to benefit and burden each other's land. They were each to use the road as a matter of right. Consideration was established. No objection to the use of the roadway by the original owners or their successors in interest was voiced by any of the owners or their successors in interest during the 10-year prescription period. The original owners and their successors in interest used the roadway in a manner that was open, notorious, continuous and adverse to the other owners of the respective lots for a period in excess of 10 years. From all of the facts and circumstances the trial court was clearly warranted in finding that the original owners and their successors in interest had acquired an easement by prescription for ingress and egress on the existing road.

Judgment affirmed.

PEARSON, C.J., and PETRIE, J., concur.