[No. 62911-5-I.   Division One.   February 22, 2010.]

JOSEPHINE CLIPSE, *Petitioner*, v. MICHELS PIPELINE CONSTRUCTION, INC., ET AL., *Respondents.*

574

*William E. Pierson Jr.* (of *Law Office of William E. Pierson Jr. PC*), for petitioner.

*George A. Mix* (of *Law Offices of Kelley J. Sweeney*), for respondents.

¶1 ELLINGTON, J. — On this certified question of statutory interpretation, we hold that a plaintiff may establish a claim for treble damages for wrongful trespass under RCW 4.24.630 only by showing that defendants intentionally and

unreasonably committed one or more acts for which they knew or had reason to know they lacked authorization. We remand for further proceedings consistent with this interpretation.

## BACKGROUND

¶2 In 2002, the King County Department of Natural Resources and Parks Wastewater Treatment Division began a pilot project to rehabilitate side sewer pipes on private property in Kent. King County entered into a contract with Michels Pipeline Construction Inc. to serve as general contractor. Michels subcontracted with Pipe Experts LLC to complete the actual work. King County expected Pipe Experts to go onto residents' private property, dig down to the existing sewer line, perform its work, and then replace the excavation. As part of the project, Earth Tech prepared specifications for the county (general requirements/technical specifications).

¶3 Josephine Clipse's home is in the neighborhood where the project took place. Her adult son, Joseph Clipse, lives on the property as well. On October 2, 2004, Pipe Experts entered the Clipse property and began work. According to Pipe Experts, it visited the Clipse home on at least two occasions the previous week and received explicit permission from Joseph and implicit permission from Josephine to proceed with the work. According to Josephine and Joseph Clipse, the first notice they received regarding the project was on October 2, after Pipe Experts had already begun work outside their residence.

¶4 A few days after the work began, Joseph Clipse discovered a wastewater backup inside the residence. It is apparently undisputed that the backup caused damage to the Clipse property, although the amount of damage is disputed. It is also undisputed that the backup was caused by gravel in the cleanout pipe placed by Pipe Experts,

although the evidence is disputed as to how the gravel got into the pipe.

¶5 Josephine Clipse filed a complaint against Michels and Pipe Experts (collectively the contractors), alleging claims for statutory trespass under RCW 4.24.630 and negligence. The parties filed cross motions for summary judgment. The court initially granted Clipse's motion, concluding that Clipse had established a statutory trespass simply by showing the contractors lacked authorization to come onto her property. The court later granted the contractors' motion for reconsideration in part, reinterpreting RCW 4.24.630 to require additional elements, upon which a question of fact precluded summary judgment. Unsatisfied with the court's statutory interpretation, the contractors orally moved for further reconsideration. The court denied the motion but entered an order certifying that its order interpreting the statute, as well as an unrelated evidentiary ruling, involved controlling questions of law as to which there is substantial ground for difference of opinion. We granted review of the statutory interpretation issue under RAP 2.3(b)(4).

## DISCUSSION

¶6 The question is what elements are required to establish statutory trespass under RCW 4.24.630. Statutory interpretation is a question of law reviewed de novo.[1] Our goal is to ascertain and effectuate the legislature's intent.[2] If the statute's meaning is plain, it must be given effect as an expression of the legislature's intent.[3]

¶7 RCW 4.24.630 provides, in relevant part, as follows:

*(1) Every person who goes onto the land of another and* who removes timber, crops, minerals, or other similar valuable

---

[1] *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

[2] *Id.*

[3] *Id.* at 9-10.

property from the land, or *wrongfully causes waste or injury* to the land, or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury. *For purposes of this section, a person acts "wrongfully" if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act.* Damages recoverable under this section include, but are not limited to, damages for the market value of the property removed or injured, and for injury to the land, including the costs of restoration. In addition, the person is liable for reimbursing the injured party for the party's reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs.[4]

The parties disagree with each other and with the trial court as to the proper application of the statute's definition of "wrongfully."

¶8 The trial court ultimately concluded a person acts wrongfully if he or she *either* acts intentionally and unreasonably *or* acts while knowing or having reason to know he or she lacks authorization.

¶9 Clipse argues the term "wrongfully" applies only to the act of coming onto another's property and can be proved merely by showing the person lacked authorization.

¶10 The contractors contend a person does not act wrongfully unless he or she acts intentionally, unreasonably, *and* while knowing or having reason to know he or she lacks authorization to so act. For reasons explained further below, we agree with the contractors.

¶11 We first address Clipse's interpretation and find it entirely without merit. There is no way to read "wrongfully" as describing the mere act of coming onto the land. The statute establishes liability for three types of conduct occurring upon the land of another: (1) removing valuable property from the land, (2) *wrongfully* causing waste or

---

4 (Emphasis added.)

injury to the land, and (3) *wrongfully* injuring personal property or real estate improvements on the land. By its express terms, the statute requires wrongfulness only with respect to the latter two alternatives. Presence on the land is required for all three. Thus, wrongfulness cannot refer to the mere act of entry upon the land.

¶12 The competing interpretations of the court and the contractors are both more reasonable. In essence, the court read the phrase "commits the act or acts while knowing" as though a comma separates "act" and "or acts," making "act" a noun and "acts" a verb. Under this interpretation, a person is liable if he or she commits an intentional and unreasonable act *or* if he or she acts while knowing or having reason to know she lacks authorization to do so. The contractors read the phrase "act or acts" to refer to one or multiple acts; thus, a person acts wrongfully only if he or she intentionally and unreasonably commits an act *and* knows or has reason to know he or she lacks authorization.

¶13 To discern the legislature's intent, we consider the statute's language in the context of related statutes.[5] RCW 4.24.630 was enacted by Laws of 1994, chapter 280, section 1.[6] Section 2 of the same session law amended former RCW 79.01.760(1) (1993),[7] in part, as follows:

> Every person who, without authorization, uses or occupies public lands, removes ((anything of value)) any valuable material as defined in RCW 79.01.038 from public lands, or causes waste or damage to public lands, or injures publicly owned personal property or publicly owned improvements to real property on public lands, is liable to the state for treble the amount of damages. *However, liability shall be for single damages if the department of natural resources determines, or*

---

[5] *Campbell & Gwinn*, 146 Wn.2d at 11-12 (plain meaning is determined from the ordinary meaning of language used in the context of the entire statute and related statutes).

[6] The statute remains substantially unchanged since its enactment. Minor amendments were made in 1999 to exempt electric utilities from liability for necessary vegetation removal. *See* LAWS OF 1999, ch. 248, § 2.

[7] *Recodified as* RCW 79.02.300 (LAWS OF 2003, ch. 334, § 554).

*the person proves upon trial, that the person, at time of the
unauthorized act or acts, did not know, or have reason to know,
that he or she lacked authorization.*[8]

As used in section 2, the phrase "act or acts" plainly refers
to one or multiple acts. "When the same words are used in
related statutes, we must presume that the Legislature
intended the words to have the same meaning."[9] Thus, we
presume the legislature intended "act or acts" as one or
multiple acts in section 1 (RCW 4.24.630) as well.

¶14 Additionally, section 2 relieves defendants of treble
damages where they did not know or have reason to know
they lacked authorization. Since the two laws establish
similar penalties for similar conduct, it is reasonable to
conclude the legislature also intended to require knowing
lack of authorization in section 1. Bolstering this conclusion
is that both sections specifically provide that they do not
apply where liability is provided under certain other stat-
utes, each of which imposes treble damages for removal of
valuable materials from various types of land *without
authorization.*[10]

¶15 The contractors' interpretation also gains support
from the legislative history of RCW 4.24.630. In the House
Bill Report, the author describes the existing law pertain-
ing to public lands trespass under former RCW 79.01.760
and states that the bill will establish similar civil damages
provisions "with respect to all lands."[11] The author para-
phrases the definition of "wrongfully" as follows: "A person
acts 'wrongfully' if he or she intentionally and unreasonably
commits an act while knowing or having reason to know

---

[8] LAWS OF 1994, ch. 280, § 2 (emphasis added).

[9] *State v. Keller*, 98 Wn. App. 381, 383-84, 990 P.2d 423 (1999).

[10] Neither section 1 nor section 2 applies "in any case where liability for
damages is provided under" specified statutes, including RCW 64.12.030 (impos-
ing treble damages for injury to or removal of trees and shrubs from municipal
commons and other specified properties "without lawful authority") and RCW
79.01.756, *recodified as* RCW 79.02.320 (imposing treble damages for removing
timber from public lands "unless expressly authorized so to do"). LAWS OF 1994, ch.
280, §§ 1, 2.

[11] Clerk's Papers at 272.

that he or she lacks authority to so act."[12] By omitting the phrase "act or acts," the author avoids the ambiguity of the actual statute and clarifies that one must act intentionally, unreasonably, *and* while knowing or having reason to know one lacks authority.

¶16 Other courts have also interpreted RCW 4.24.630 to require intentional conduct in all instances. In *Borden v. City of Olympia*,[13] the city assisted private landowners in a drainage project that caused the flooding of the plaintiff's land and home. Division Two of this court observed, "By [RCW 4.24.630]'s plain terms, a claimant must show that the defendant 'wrongfully' caused waste or injury to land, and a defendant acts 'wrongfully' only if he or she acts 'intentionally.' "[14] In other words, intentional conduct is a necessary element of an action under RCW 4.24.630, not one of two alternative bases for liability.

¶17 Given the context of related statutes, legislative history, and the statute's interpretation by other courts, we hold that RCW 4.24.630 requires a showing that the defendant intentionally and unreasonably committed one or more acts *and* knew or had reason to know that he or she lacked authorization. We remand for further proceedings consistent with this interpretation.[15]

BECKER and COX, JJ., concur.

---

[12] *Id.*

[13] 113 Wn. App. 359, 53 P.3d 1020 (2002).

[14] *Id.* at 374.

[15] In addition to this statutory interpretation question, the trial court certified and the parties briefed an evidentiary issue concerning the admissibility of the project's "general requirements/technical specifications." As our commissioner noted, that issue does not warrant discretionary review as a controlling question of law under RAP 2.3(b)(4). Accordingly, we decline to address it.